IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No.  12-10080-MLB |
| | ) | |
| JEFFREY TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to suppress. (Doc. 15). The motion is fully briefed and the court conducted an evidentiary hearing on October 1, 2012. (Docs. 15, 18). The motion to suppress is denied for the reasons herein.

**I.    Facts**

In February 2012, defendant Jeffrey Taylor was on probation for state charges.  A state court issued an arrest warrant for Taylor due to a probation violation.  Matthew Hall, a Sedgwick County Sheriff's Deputy, began searching for Taylor.  Hall received a tip from a confidential informant that Taylor was residing in a duplex at 1121 West 43rd Street South in Wichita, Kansas.  The duplex was rented to Amber Wallace and Taylor was living in one of the bedrooms in the duplex.  Taylor was not the only individual living in the duplex.  The informant also disclosed that Taylor was always armed with a gun.  On February 9, 2012, Hall and at least five other law enforcement officers, arrived at the duplex.  The officers pulled up on the west and established an approach plan.  Hall and another deputy approached the front door with their guns drawn because of the information

concerning Taylor's armed status.  Hall knocked on the door and heard music playing.  The music then turned off and an individual yelled, "hang the fuck on."  The door opened about six or eight inches by Taylor, who answered the door without a shirt.  Hall recognized Taylor by his distinctive tattoos on his chest.

Taylor slammed the door shut and locked it.  Hall attempted to open the door and then immediately kicked the door open.  Hall ran inside the house after Taylor, who was naked.  Hall apprehended Taylor in the living room, which is adjacent to the hall and approximately six feet from the bathroom door.  The bathroom door was partially open and the water was running in the shower.  Hall instructed other officers to clear the rest of the house because Hall believed that there might be other individuals in the home.  Hall then went into the bathroom.  After opening the door to check for an individual, Hall checked behind the door.  Hall observed a gun which was on a cabinet shelf.[1]  Hall seized the gun.

At some point, Taylor asked the officers if he could get dressed.  Taylor specifically asked for clothes which were located on the floor in the bathroom.  Prior to handing the clothes to Taylor, Hall searched the pants.  In one pocket, Hall found bullets.  Upon searching the other pocket, Hall retrieved a black pouch which contained methamphetamine, 20 baggies, and a spoon.  Hall also found a drug ledger and $250 in cash.  Hall seized the evidence which was found in Taylor's pants.

---

[1] In his motion, Taylor stated that the gun was "on a shelf, wedged between towels. . ."  No such evidence was introduced at the hearing.

Taylor now moves to suppress the gun and drugs as a result of an illegal search.

## II. Analysis

As a threshold matter, Taylor has standing to challenge the search of the bathroom since "an overnight guest in a hotel room or in the home of a friend has a legitimate expectation of privacy in the premises." United States v. Carr, 939 F.2d 1442, 1446 (10th Cir. 1991) (discussing Minnesota v. Olson, 495 U.S. 91, 110 S. Ct. 1684, 109 L. Ed.2d 85 (1990)). Although not the tenant of the duplex, Taylor, as a guest invited by the tenant, has a legitimate privacy expectation. United States v. Garza, No. 04-4046, 2005 WL 237757 (10th Cir. Feb. 2, 2005).

Next, Hall lawfully entered the duplex to arrest Taylor. Payton v. New York, 445 U.S. 573, 603, 100 S. Ct. 1371 (1980)("an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.")

Therefore, the question before the court is whether Hall violated Taylor's Fourth Amendment rights by performing a protective sweep in the bathroom after Taylor's arrest. In Maryland v. Buie, 494 U.S. 325, 327, 110 S. Ct. 1093 (1990), the Supreme Court explained that "[a] 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." See Armijo ex rel. Armijo Sanchez v. Peterson, 601 F.3d 1065, 1073 (10th Cir. 2010). A protective sweep is justified by the threat of

accomplices launching a surprise attack during an arrest and is particularly important during an in-home arrest, due to the heightened potential for an ambush in unfamiliar surroundings. Id. at 333. A protective sweep may be executed after an arrest if the officers "possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." United States v. Freeman, 479 F.3d 743, 750 (10th Cir. 2007)(citing Buie, 494 U.S. at 327).

In this case, the officers had reason to believe that there were weapons in the home based on the information they had from the confidential informant. Additionally, the officers knew that Taylor did not reside in the duplex alone, the bathroom door was ajar and the water was running in the shower. The court finds that these facts warranted the officers' belief that the area may pose a danger to the officers. See United States v. Tisdale, 921 F.2d 1095, 1097 (10th Cir. 1990) (finding reasonable belief of danger based in part on an officer's knowledge of occupant's previous firearm violations).

Therefore, Hall's protective sweep of the bathroom was warranted and the seizure of the gun justified as it was discovered in plain view.[2]

---

[2] Hall's entry into the bathroom was reasonable for two other reasons: first, Hall asked him to enter to get his clothing and second, because of the water running in the shower. Hall was taking Taylor into custody and no one else was in the duplex. It was entirely reasonable for Hall to turn off the water as opposed to leaving it running after the officers left. The gun was in plain view in a small bathroom. Its discovery was inevitable.

Turning to the methamphetamine, the court finds that Hall's search of Taylor's pants was also justified. Taylor, not Hall, selected the pants he wanted to wear. There is no question that Hall had the right to search those pants prior to turning them over to Taylor. United States v. Morgan, 936 F.2d 1561, 1578, n. 2 (10th Cir. 1991)("after a proper custodial arrest has been made, it is unnecessary to obtain a warrant to search the arrestee's person and clothing.")

### III. Conclusion

Taylor's motion to suppress is accordingly denied. (Doc. 15).

A status conference in this case will be held on October 29 at 1:30 p.m. The jury trial will be held on November 6 at 9:00 a.m.

IT IS SO ORDERED.

Dated this __4th__ day of October 2012, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE